UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMERICAN RELIABLE INSURANCE COMPANY a/s/o BILL BRAZZEL, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 3:21-cv-00141 ) ) |
| LAURIE ADDINGTON and DAVID BROGDON, ESQ., as Administrator Ad Litem of the Estates of JOSHUA PEREZ and JEFFREY PIMER, | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

American Reliable Insurance Company ("ARIC") provides fire insurance to Bill Brazzel, who is a landlord. After a fire occurred at one of Mr. Brazzel's properties, ARIC compensated him for the damages. Then, acting as Mr. Brazzel's subrogee, ARIC sued the tenants from the damaged building[1] ("Defendants"), seeking to recover the amount paid to Mr. Brazzel. ARIC alleged Defendants negligently caused the fire at Mr. Brazzel's property.

At issue now is Defendants' Motion for Judgment on the Pleadings. (Doc. No. 25). The motion relies upon the "Sutton Rule." Under the Sutton Rule, in general, a landlord's fire insurance carrier cannot sue the landlord's tenants in a subrogation action related to fire damage. The Court finds the Sutton Rule bars ARIC's lawsuit, and no exception to that rule applies to this case. The Court will grant Defendants' motion and dismiss this case.

---

[1] Two of the tenants died in the fire, so ARIC's lawsuit proceeded against David Brogdon as Administrator Ad Litem of the deceased tenants' estates.

1

**I.   BACKGROUND**

Mr. Brazzel owns property located at 312 West Railroad Street in Dickson, Tennessee. (Doc. No. 1 ¶ 5). He rented the property to Laurie Addington, Joshua Perez, and Jeffrey Pimer through a lease he executed with Mr. Pimer in 2005 (the "Pimer Lease"). (Id. ¶ 6; Doc. No. 24 at 1; Doc. No. 24-1 at 1, 6). The Pimer Lease remained in effect as of November 13, 2019. (Doc. No. 24 at 1).

On that date, 312 West Railroad Street suffered a fire. (Doc. No. 1 ¶ 7). Ms. Addington, Mr. Perez, and Mr. Pimer allegedly caused the fire by misusing a kerosene heater.[2] (Id. ¶ 15). The fire significantly damaged Mr. Brazzel's property. (Id. ¶ 12). ARIC subsequently compensated Mr. Brazzel for the damage, paying out $241,972.17 under a fire insurance policy Mr. Brazzel held through ARIC. (Id. ¶ 20).

On February 23, 2021, ARIC filed a complaint (the "Complaint") as Mr. Brazzel's subrogee. (Id. ¶ 21). The Complaint alleges Ms. Addington, Mr. Perez, and Mr. Pimer were negligent in connection with the fire and seeks to recover the amount ARIC paid Mr. Brazzel. (Id. ¶¶ 22–26). Defendants filed their Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) on April 27, 2021. (Doc. No. 25).

**II.   LEGAL STANDARD**

The standard of review for a Rule 12(c) motion for judgment on the pleadings "is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 389 (6th Cir. 2007). Therefore, when evaluating a Rule 12(c) motion, courts must "construe the complaint in the light most favorable to

---

[2] The Court accepts this fact as true only for the purpose of ruling on Defendants' Motion for Judgment on the Pleadings, as required under the Federal Rules of Civil Procedure. Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998).

2

the plaintiff," and "accept all of the complaint's factual allegations as true." Id. Courts may only grant judgment on the pleadings if "the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Id.

If a court considers "matters outside the pleadings" when analyzing a Rule 12(c) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, courts need not convert Rule 12(c) motions into Rule 56 motions where the parties, by stipulation, agree to incorporate information into the pleadings. See Darby v. Childvine, Inc., 964 F.3d 440, 444 (6th Cir. 2020) ("[T]he district court was not required to convert Childvine's motion to dismiss into one for summary judgment under Federal Rule of Civil Procedure 12(d). The district court, with Childvine's blessing, deemed Darby's stipulation to be part of her operative complaint, meaning it did not consider matters outside the pleadings.").

In this case, ARIC did not originally attach the Pimer Lease to the Complaint. (Doc. No. 1). But the parties stipulated to the existence and content of the Pimer Lease "for purposes of the Defendants' Motion for Judgment on the Pleadings." (Doc. No. 24 at 1). The Court therefore construes the Pimer Lease as part of the Complaint, and will not convert Defendants' Rule 12(c) motion into one for summary judgment.

### III. ANALYSIS

Under Tennessee common law, the Sutton Rule determines whether a landlord's fire insurance carrier may sue the landlord's tenants in subrogation. The Sutton Rule bars ARIC's subrogation claim. No exception to that rule applies to this case, and ARIC's attempt to distinguish on-point precedent is unavailing. Therefore, the Court will dismiss ARIC's claim.

3

A. The Sutton Rule Prohibits ARIC's Subrogation Claim.

To determine whether ARIC's subrogation claim survives dismissal, the Court must apply the Sutton Rule. See Dattel Fam. Ltd. P'ship v. Wintz, 250 S.W.3d 883, 888, 894 (Tenn. Ct. App. 2007) (holding the approach to subrogation actions "frequently referred to as the Sutton Rule," based on the decision in Sutton v. Jondahl, 532 P.2d 478 (Okla. Civ. App. 1975), applies in Tennessee); Allstate Ins. Co. v. Watson, No. M2003-01574-COA-R3CV, 2005 WL 457846, at *7 (Tenn. Ct. App. Feb. 25, 2005) (same).[3] Under the Sutton Rule, "absent an express agreement to the contrary in a lease, a tenant and his or her landlord are implied coinsureds under the landlord's fire insurance policy." Dattel, 250 S.W.3d at 889 (citation and quotation omitted). In those circumstances, "the landlord's liability insurer is precluded from bringing a subrogation action against the negligent tenant." Id.

The Sutton Rule prohibits insurers' subrogation actions against tenants whose leases are "silent" as to insurance. Watson, 2005 WL 457846, at *9. Plainly, a lease silent regarding fire insurance coverage cannot "express[ly]" exclude tenants from that coverage. See id.

Here, ARIC admits the Pimer Lease is "completely silent" as to insurance. (Doc. No. 28 at 5). And the lease's text confirms as much. (Doc. No. 24-1 at 1–6). Therefore, the Sutton Rule's "express agreement" exception does not apply, and Defendants are coinsured under Mr. Brazzel's fire insurance policy with ARIC, which cannot sue Defendants in subrogation. See Dattel, 250 S.W.3d at 889.

---

[3] Federal courts "apply state substantive law" when their "jurisdiction is premised on diversity of citizenship." Shropshire v. Laidlaw Transit, Inc., 550 F.3d 570, 571 (6th Cir. 2008). Where, as here, "the state's highest court has not ruled on an issue," federal courts "must ascertain the state law from all relevant data, including the state's intermediate court decisions." Herrera v. Churchill McGee, LLC, 680 F.3d 539, 544 (6th Cir. 2012) (citations and quotations omitted).

4

B.  ARIC's Argument that the Sutton Rule's Express Agreement Exception Applies to this Case Falls Short.

ARIC argues the Pimer Lease includes an express agreement excluding Defendants from Mr. Brazzel's fire insurance coverage despite the lease's failure to mention insurance. (Doc. No. 28 at 3–5). The Pimer Lease obligates tenants to "pay reasonable charges (other than for normal wear and tear) for repair of damages to the premises." (Id. at 3–4 (quoting Doc. No. 24-1 at 3)). ARIC asserts the "repair of damages" provision contains "no qualification that [its] payment obligation is somehow only subject or limited to repairs not paid for by insurance." (Id. at 4). Hence, ARIC contends the provision counts as an express agreement that Defendants are not coinsured under Mr. Brazzel's fire insurance policy. (Id.).

ARIC's argument misinterprets the express agreement exception. That exception only applies where a lease includes a "clear expression [of] intent that the insurance be for the benefit of the lessor only." Tate v. Trialco Scrap, Inc., 745 F. Supp. 458, 475 (M.D. Tenn. 1989). A lease's "general repair and maintenance" provision is "not sufficient" to except its signatories from the Sutton Rule's protection. Id. at 474. This is indisputable, because both Dattel and Watson held the express agreement exception did not apply to leases that contained "repair of damages" provisions nearly identical to the one in the Pimer Lease. Dattel, 250 S.W.3d at 885 (lease stating "the Resident shall be liable . . . for all damages done to the premises . . . ordinary wear and tear excluded" included no express agreement removing the Sutton Rule's protections); Watson, 2005 WL 457846, at *1 (express agreement exception did not apply to lease making tenants "responsible for all damages to the apartment, intentional or non intentional"). Under Dattel and Watson, the "repair of damages" provision in the Pimer Lease does not trigger the Sutton Rule's express agreement exception.

5

C.     ARIC's Attempt to Distinguish Tennessee Common Law is Unavailing.

ARIC argues this case is distinguishable from Dattel and Watson.  The leases in those cases included provisions making tenants responsible for insuring their "personal" property.  Dattel, 250 S.W.3d at 885; Watson, 2005 WL 457846, at *2.  ARIC asserts those provisions "implie[d] that the building insurance would cover the premises making [each tenant], arguably, an *implied* co-insured under those policies."  (Doc. No. 28 at 5).  In this case, ARIC says, "the lease is completely silent as to insurance, so there can be no implication read from the lease nor can any reasonable inference be made from its language that the defendants/tenants are co-insureds."  (Id.).  For that reason, ARIC contends that holding in its favor would not contradict Dattel and Watson.  (See id.).

The Court finds ARIC's attempt to distinguish Dattel and Watson unconvincing.  Perhaps, as ARIC suggests, those cases *could* have barred subrogation because the subject leases, read in their entirety, "implied" the tenants were coinsureds.  But that is immaterial because neither case actually employed that approach.  In fact, Dattel explicitly rejected it.  250 S.W.3d at 890–91 (citation and quotation omitted) (rejecting the "case-by-case approach," in which "the court looks at the lease as a whole" to determine whether tenants have coinsured status, because that approach "fails to provide legal certainty").  And both Dattel and Watson implicitly rejected ARIC's proposed approach by adopting the Sutton Rule's "*express* agreement" exception.  Dattel, 250 S.W.3d at 892 (emphasis added); Watson, 2005 WL 457846, at *3 (emphasis added).  ARIC's attempt to distinguish Tennessee common law is really an attempt to rewrite it, and substitute ARIC's judgment in for that of the Tennessee Appellate Court.  Contrary to ARIC's argument, Dattel and Watson are indistinguishable from the present case in all relevant respects.

6

## IV. CONCLUSION

The law is clear: only an express agreement excluding tenants from coverage under their landlord's fire insurance policy permits the landlord's insurance carrier to bring a subrogation action related to fire damage against the tenants. The Pimer Lease includes no such agreement. Therefore, the Court will grant Defendants' Motion for Judgment on the Pleadings (Doc. No. 25) and dismiss the Complaint (Doc. No. 1) without prejudice.[4]

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] The Court will dismiss the Complaint without prejudice to refiling on a very limited basis. The Pimer Lease does not contain Ms. Addington's name or Mr. Perez's name. (Doc. No. 24-1). The Court's foregoing analysis might change if Ms. Addington and Mr. Perez were not ARIC's tenants subject to the terms of the Pimer Lease on the date of the fire. But the Court must conclude that they were, based on ARIC's own alleged facts. ARIC stipulates that (1) Ms. Addington and Mr. Perez were Mr. Brazzel's tenants at 312 West Railroad Street on the date of the fire (Doc. No. 1 ¶¶ 6–7), (2) the Pimer Lease was "in effect" on that date (Doc. No. 24 at 1), and (3) the Pimer Lease provides for 312 West Railroad Street to be occupied "solely" by Mr. Pimer "and family" (Doc. No. 24-1 at 1). (ARIC also admits in its opposition brief that the Pimer Lease covers Ms. Addington and Mr. Perez, by referring to it as "the lease between plaintiff's insured . . . and defendants." (Doc. No. 28 at 1). The Court does not consider the content of that admission as fact for the purposes of its present ruling, because the opposition brief is not part of the pleadings. See Laporte v. City of Nashville, No. 3:18-CV-00282, 2019 WL 845413, at *3 (M.D. Tenn. Feb. 21, 2019).) Dismissal is appropriate because the facts ARIC alleges do not plausibly support a legal claim in view of the Sutton Rule. See Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (pleadings must "render the legal claim plausible, i.e., more than merely possible" to survive dismissal). But due to the absence of Ms. Addington's name and Mr. Perez's name in the Pimer Lease, the Court will dismiss ARIC's claims against them without prejudice. Defendants have no right to refile against Mr. Pimer's estate.